1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11                          PORTLAND DIVISION

12   NIKE, INC., an Oregon          )
     corporation,                   )
13                                   )
                    Plaintiff,       )
14                                   )     No.  CV-10-389-HU
          v.                         )
15                                   )
     VINCE LOMBARDI, JR., an         )
16   individual; SUSAN LOMBARDI, an  )
     individual; and CMG WORLDWIDE,  )     OPINION & ORDER
17   INC., an Indiana corporation,   )
                                     )
18                  Defendants.      )
     _____)
19
     Jon P. Stride
20   David M. Weiler
     TONKON TORP LLP
21   1600 Pioneer Tower
     888 SW Fifth Avenue
22   Portland, Oregon 97204-2099

23        Attorneys for Plaintiff

24   Jan K. Kitchel
     SCHWABE, WILLIAMSON & WYATT, P.C.
25   Pacwest Center
     1211 SW Fifth Avenue, Suite 1900
26   Portland, Oregon 97204

27        Attorney for Defendants Vince Lombardi, Jr. & Susan Lombardi

28   / / /


1 - OPINION & ORDER

Bradley Schrock
SCHROCK LAW OFFICE, P.C.
500 SW Hall Boulevard
Beaverton, Oregon 97005

Theodore J. Minch
SOVICH MINCH, LLP
10099 Chesapeake Drive, Suite 100
McCordsville, Indiana 46055

Attorneys for Defendant CMG Worldwide, Inc.

HUBEL, Magistrate Judge:

Plaintiff Nike, Inc. brings this action against defendants Vince Lombardi, Jr., Susan Lombardi, and CMG Worldwide, Inc. The action against the individual defendants is brought against them as fifty percent owners of the intellectual property of the late Vince Lombardi.

All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). Defendant CMG moves to dismiss the action for lack of personal jurisdiction, or alternatively, to transfer venue. I deny the motion in its entirety.

BACKGROUND

As alleged in the Complaint, the facts are as follows: Plaintiff is an Oregon corporation. Vince Lombardi, Jr., resides in the State of Washington, and Susan Lombardi resides in Florida. Compl. at ¶¶ 1-3. They each own a fifty percent interest in the intellectual property related to the late Vince Lombardi, and in particular, the intellectual property at issue in this case. Id. at ¶ 4. Together, they do business related to the intellectual property as the Estate of Vince Lombardi ("the Estate"). Id.

CMG Worldwide is an Indiana corporation and is the exclusive worldwide business representative of the Estate of Vince Lombardi.

2 - OPINION & ORDER

1   Id. at ¶ 5.   At all times material to the allegations in the
2   Complaint, CMG was acting as the authorized agent of the Estate and
3   acted within the scope of its agency.   Id.

4        In June 2008, plaintiff approached the Estate, through CMG, to
5   discuss the possibility of licensing the words and audio recording
6   of a speech given by the late Vince Lombardi.   Id. at ¶ 8.
7   Plaintiff sought the license to use the speech in a television and
8   internet advertising campaign.   Id.

9        On June 25, 2008, CMG sent plaintiff a draft license agreement
10  relating to the speech.   Id. at ¶ 9.   After reviewing the document,
11  plaintiff informed CMG that the agreement was unacceptable in its
12  current form.   Id.   Plaintiff demanded two changes:   (1) payment
13  for the license must be contingent upon the advertisement airing;
14  and (2) plaintiff would not display any trademark notification on
15  the advertisement that would be visible to viewers.   Id.   In the
16  same written communication, plaintiff stated that the license must
17  extend to both the words and the voice recording of the late Vince
18  Lombardi.   Id.   In addition, plaintiff asked for "confirmation that
19  Lombardi wrote the speech we want to use, the words were original
20  to him, and that the Estate owns the copyright to the recording."
21  Id.

22       In response, CMG confirmed that it "could make all the
23  changes" except one related to the time of payment.   Id. at ¶ 10.
24  CMG's failure to specifically reject plaintiff's understanding that
25  the license would include both the words and voice recording of the
26  late Vince Lombardi implied that plaintiff's understanding was
27  correct.   Id.

28       CMG asked plaintiff for the favor of paying the $150,000
3 - OPINION & ORDER

1  license fee before the advertisement ran. <u>Id.</u> at ¶ 11. Plaintiff
2  was willing to make the payment before the advertisement ran
3  because plaintiff enjoyed a long-term relationship of trust with
4  CMG. <u>Id.</u>

5      Plaintiff's representative in charge of the negotiations
6  informed CMG that plaintiff was satisfied with the agreement as
7  long as it contained the changes plaintiff had requested. <u>Id.</u> at
8  ¶ 12. He also informed CMG that he was running out the door on a
9  personal trip and if he received the agreement before he left he
10  would sign it immediately; otherwise, the deal would close the
11  following week. <u>Id.</u>

12      CMG responded that same day, June 25, 2008, by sending an
13  email to plaintiff stating that the revised agreement contained
14  "all the changes" plaintiff had requested. <u>Id.</u> at ¶ 13. CMG
15  followed that email with another email to plaintiff that attached
16  the license agreement. <u>Id.</u> The license agreement CMG sent to
17  plaintiff did not contain the agreed-upon changes. <u>Id.</u> It did not
18  include the requested provision that made payment for the license
19  contingent upon the advertisement running. <u>Id.</u> Instead, CMG added
20  language to the license agreement that CMG and plaintiff had never
21  discussed: it made plaintiff's advance payment for the license
22  "nonrefundable." <u>Id.</u> Furthermore, CMG did not disclose the fact
23  that the recording of the speech did not exist. <u>Id.</u> CMG also
24  failed to include "Schedule A" to the license agreement that would
25  have revealed that the recording did not exist. <u>Id.</u>

26      Plaintiff relied on CMG's silence and receipt of the license
27  agreement to support plaintiff's understanding that the Lombardi
28  voice recording existed and that the Estate had the rights to the

4 - OPINION & ORDER

1   speech and the voice recording.  Id. at ¶ 14.  Plaintiff further
2   relied on CMG's representations that it had made all the required
3   changes to the license agreement.  Id.  As a result, plaintiff's
4   representative quickly signed the license agreement at his Oregon
5   office before leaving on his trip.  Id.

6       Subsequently, plaintiff discovered that the Estate did not, in
7   fact, have an audio recording of the speech.  Id. at ¶ 15.  The
8   advertisement that was designed with the speech in mind required
9   such a recording.  Id.  The mere text of the speech was of no value
10  to plaintiff.  Id.

11      Plaintiff told CMG that the Vince Lombardi voice recording was
12  material to the license agreement and demanded that the Estate
13  return the payment that plaintiff made to it under the license
14  agreement.  Id. at ¶ 16.  The Estate refused.  Id.

15      Based on these allegations, plaintiff brings the following
16  claims:  (1) breach of contract against the Estate with count one
17  alleging a failure to deliver the promised voice recording and
18  count two alleging the failure to return the advanced payment; (2)
19  mutual mistake against the Estate; and (3) fraud against CMG.

20                  STANDARDS - MOTION TO DISMISS

21      Under Federal Rule of Civil Procedure 12(b)(2), a defendant
22  may move for dismissal on the grounds that the court lacks personal
23  jurisdiction.  Plaintiff has the burden of showing personal
24  jurisdiction.  Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir.
25  2008), cert. denied, 129 S. Ct. 1318 (2009).

26          If the district court decides the motion without an
            evidentiary hearing, which is the case here, then the
27          plaintiff need only make a prima facie showing of the
            jurisdictional facts. . . . Absent an evidentiary hearing
28          this court only inquires into whether the plaintiff's

5 - OPINION & ORDER

pleadings and affidavits make a prima facie showing of personal jurisdiction. . . . Uncontroverted allegations in the plaintiff's complaint must be taken as true. . . . Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

Id.

In diversity cases, the court looks to the law of the state in which it sits to determine whether it has personal jurisdiction over the nonresident defendant.  Western Helicopters, Inc. v. Rogerson Aircraft Corp., 715 F. Supp. 1486, 1489 (D. Or. 1989); see also Boschetto, 539 F.3d at 1015 ("When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.").

Oregon Rule of Civil Procedure (ORCP) 4 governs personal jurisdiction issues in Oregon.  Because Oregon's long-arm statute confers jurisdiction to the extent permitted by due process, Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 760 (9th Cir. 1990) (citing ORCP 4L; Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale, 294 Or. 381, 657 P.2d 211 (1982)), I may proceed directly to the federal due process analysis.  See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003) (when state long arm statute reaches as far as the Due Process Clause, court need only analyze whether the exercise of jurisdiction complies with due process); see also Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 909 (D. Or. 1999) (because Oregon's catch-all jurisdictional rule confers personal jurisdiction coextensive with due process, the analysis collapses into a single framework and the court proceeds under federal due process standards).

To comport with due process, the nonresident defendant must

6 - OPINION & ORDER

1    have certain "minimum contacts with the forum state so that the

2    exercise of jurisdiction does not offend traditional notions of

3    fair play and substantial justice." Boschetto, 539 F.3d at 1015.

4    The forum state may exercise either general or specific

5    jurisdiction over a nonresident defendant. Id. at 1016.

6    Ordinarily, the court first engages in the general jurisdiction

7    analysis. If the contacts are insufficient for a court to invoke

8    general jurisdiction, the court then applies the relevant test to

9    determine whether specific jurisdiction exists. In re Tuli, 172

10   F.3d 707, 713 n.5 (9th Cir. 1999).

11                     DISCUSSION - MOTION TO DISMISS

12        Plaintiff concedes that the nature and extent of CMG's

13   contacts with Oregon are insufficient to subject it to general

14   jurisdiction. Pltf's Resp. Mem. at p. 3 n.1  Thus, I proceed

15   directly to the specific jurisdiction analysis.

16        In addition to the facts set forth above, it is relevant to

17   set forth the additional facts asserted in support of the fraud

18   claim against CMG. First, plaintiff realleges and incorporates all

19   of the allegations recited above. Compl. at ¶ 32. Then, plaintiff

20   alleges as follows:

21                                33.

22        In response to NIKE's request that CMG confirm the
          existence of and right to license the Lombardi Speech
23        voice recording, CMG delivered the License Agreement to
          NIKE that recites "Licensor is the proprietor of various
24        copyrights in speeches by Vince Lombardi as well as
          rights . . . associated with the . . . voice and visual
25        representation of the late Vince Lombardi . . . " CMG's
          delivery of the License Agreement was a representation to
26        NIKE that a voice recording of the Lombardi Speech
          existed and was subject to the License Agreement.

27                                34.

28

7 - OPINION & ORDER

Alternatively, CMG's silence in response to NIKE's request that CMG confirm the existence of and right to license the Lombardi Speech voice recording in connection with delivering the License Agreement was a representation by omission.

35.

CMG intended NIKE to rely on CMG's representations about the existence of and the Estate's right to license the Lombardi Speech voice recording. NIKE, in fact, did rely on those representations, forming a belief that the Lombardi Speech voice recording existed. NIKE would not have entered into the License Agreement with the Estate had it known the truth about the voice recording. CMG knew that NIKE believed that audio recording existed. CMG also knew that NIKE had conditioned its acceptance of the License agreement on the existence of such an audio recording.

36.

CMG's representations in paragraphs 33 and 34, above, were false.

37.

CMG acted with at least reckless disregard for the truth about the existence of a voice recording of the Lombardi Speech. In spite of access to the truth about the existence of the Lombardi Speech voice recording, CMG at a minimum recklessly failed to ascertain the truth.

38.

NIKE has been damaged by CMG's fraudulent misrepresentations in an amount to be proven at trial, but in no event less than $150,000.

Id. at ¶¶ 33-38.

Plaintiff first argues that CMG is subject to personal jurisdiction under ORCP 4E(3) which provides that the courts of this state have personal jurisdiction over a defendant "[i]n any action or proceeding which . . . [a]rises out of a promise, made anywhere to the plaintiff . . . by the defendant to deliver . . . within this state . . . goods, documents of title, or other things of value[.]" ORCP 4E(3). Plaintiff argues that the allegations in

8 - OPINION & ORDER

the Complaint fairly state that CMG promised to deliver to plaintiff in Oregon a license to use the voice recording of the speech. All of plaintiff's claims arise out of this transaction with CMG. According to plaintiff, because of CMG's fraudulent promise to deliver a license to the voice recording of the speech, plaintiff entered into a licensing agreement it otherwise would not have.

In Boehm & Co. v. Environmental Concepts, Inc., 125 Or. App. 249, 865 P.2d 413 (1993), the Oregon Court of Appeals explained that

> although [ORCP 4E(3)] is not based on any prior constitutional decisions, it was intended to extend personal jurisdiction to the constitutional limits. . . . Therefore, in applying ORCP 4E(3), we first inquire whether it applies to the transaction between the parties. If it does, we next inquire whether that transaction presents sufficient contacts with Oregon that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

Id. at 253, 865 P.2d at 415 (citation omitted).

The Complaint alleges that CMG's delivery of the license agreement which recited that the "licensor" was the proprietor of various copyrights in speeches by Vince Lombardi and rights associated with the voice and visual representation of Vince Lombardi, was a representation to plaintiff that a voice recording of the speech existed and was subject to the license agreement. Compl. at ¶ 33. Alternatively, plaintiff alleges that CMG's silence in response to plaintiff's request that CMG confirm the existence of and right to license the speech voice recording in connection with the delivery of the license agreement, was a representation by omission. Id. at ¶ 34. Based on the allegations recited above, plaintiff argues that this is an action which

9 - OPINION & ORDER

1  "[a]rises out of a promise," made to plaintiff by CMG to "deliver
2  . . . within this state  . . . goods, documents of title, or other
3  things of value."

4      CMG contends that the allegations show that it merely signed
5  an  agreement  permitting  plaintiff  to  use  certain  intellectual
6  property and that as the licensing agent for the Lombardis, it had
7  no  ability  or  obligation  by  virtue  of  the  agreement,  to  deliver
8  within any jurisdiction and goods, documents of title, or anything
9  else  of  value.   On  the  contrary,  CMG  states,  it  fulfilled  its
10  obligations under the agreement by permitting plaintiff to use the
11  intellectual  property  on  or  in  connection  with  the  advertisement
12  contemplated by plaintiff and its agents.

13      As  indicated,  ORCP  4E(3)  addresses  a  promise  to  deliver  in
14  Oregon  "other  things  of  value."   Here,  the  allegations  of  the
15  Complaint  show  that  CMG  clearly  agreed  to  deliver  a  license
16  covering the use of certain rights.  Without question, that license
17  is  something  of  value  which  CMG  sold  to  plaintiff.    This  is
18  sufficient to meet the requirements of ORCP 4E(3).

19      Under Boehm, after determining that ORCP 4E(3) applies to the
20  transaction  at  issue,  the  Court  then  analyzes  whether  the
21  "transaction  presents  sufficient  contacts  with  Oregon  that  the
22  exercise  of  jurisdiction  does  not  offend  traditional  notions  of
23  fair play and substantial justice."  Boehm, 125 Or. App. at 253,
24  865 P.2d at 415.  Because this question is co-extensive with the
25  federal due process analysis, I do not separately discuss it.

26      The  Ninth  Circuit  uses  a  three-part  test  to  determine  if  a
27  party  has  sufficient  minimum  contacts  to  be  subject  to  specific
28  personal jurisdiction consistent with the Due Process Clause:

10 - OPINION & ORDER

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (internal quotation omitted).

Plaintiff bears the burden on the first two parts of the test. Boschetto, 539 F.3d at 1016. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." Id. If plaintiff fails at the first step, "the jurisdictional inquiry ends and the case must be dismissed." Id.

I.  Purposeful Availment/Purposeful Direction

The Ninth Circuit typically analyzes cases that sound primarily in contract under the "purposeful availment" standard, while those sounding primarily in tort are examined under the "purposeful direction" standard. Id. While this case has both types of claims, the only claim against CMG is one for fraud, a tort claim, triggering the "purposeful direction" analysis.

The Ninth Circuit

evaluates purposeful direction using the three-part "Calder-effects" test, taken from the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). . . . Under this test, the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. . . . There is no requirement that the defendant have any physical contacts with the forum.

11 - OPINION & ORDER

Brayton Purcell, 606 F.3d at 1128 (citations and internal quotation omitted).

Plaintiff argues that defendant is alleged to have committed an intentional act by its intentional misleading statement about it being the proprietor of various copyrights in speeches, etc., and it falsely representing to plaintiff in an email that it had made all the changes to the license agreement that plaintiff had requested. See Marlyn Nutraceuticals, Inc. v. Improvita Health Prods, 663 F. Supp. 2d 841, 850-51 (D. Ariz. 2009) (intentional act satisfied based on allegedly fraudulent misrepresentations in emails directed to plaintiff in forum); see also Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 806 (9th Cir. 2004) (holding that placing an ad in a local newspaper constituted an intentional act); Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1088 (9th Cir. 2000) (finding that the sending of a demand letter constituted an intentional act).

Plaintiff next contends that CMG expressly aimed its fraudulent conduct at Oregon, where it knew that Nike was based. Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1112 (9th Cir. 2002) ("Because [defendants] knew that Dole's principal place of business was in California, knew that the decision makers for Dole were located in California, and communicated directly with those California decision makers, we conclude that their actions were 'expressly aimed' at the forum state"); Marlyn Nutraceuticals, 663 F. Supp. 2d at 851 (finding "expressly aiming" element satisfied based on allegedly fraudulent misrepresentations in emails directed to plaintiff in forum).

As to the harm element of the "effects" test, plaintiff argues

12 - OPINION & ORDER

that it has sufficiently alleged harm caused by CMG's misrepresentations by alleging that it relied on CMG's representations and would not have entered into the license agreement had it know the truth about the voice recording, and by alleging that it was harmed in the amount of $150,000. Compl. at ¶¶ 33-38.

CMG contends that under the effects test, plaintiff alleges no willful conduct on the part of CMG that can be characterized as willfully directing its activities at Oregon. Rather, CMG argues that it "merely" handled licensing of intellectual property rights that Nike sought to license from the Lombardis in response to Nike having contacted CMG in Indiana. CMG states that it did not advertise, market, or actively seek licensing opportunities in Oregon. It notes that it "merely" signed an agreement permitting plaintiff to use the intellectual property rights and notably, that it did not initiate this contact.

CMG also argues that plaintiff is wrong when it asserts that CMG had an obligation to provide the audio recording under the license agreement. CMG asserts that CMG asked plaintiff if plaintiff possessed the audio of the speech and that plaintiff did not respond to this inquiry. Mark Roesler June 9, 2010 Declr. at ¶¶ 2-3.

While CMG may describe its actions as the "mere" handling of a request by plaintiff to license intellectual property rights belonging to the Lombardis, CMG cannot escape the allegations in the Complaint which indicate that CMG either expressly, or impliedly, made a misrepresentation regarding the existence of the voice recording of Vince Lombardi, that CMG allegedly made the

13 - OPINION & ORDER

misrepresentations in an email sent to plaintiff and in the attachment to the email, and that CMG knew that it was sending these communications to plaintiff in Oregon. As noted above, at this stage of the proceedings, any factual conflicts are resolved in plaintiff's favor. Thus, these factual assertions by plaintiff control the analysis.

Additionally, as explained in Bancroft & Masters, Calder does not stand for the "broad proposition" that "a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." 223 F.3d at 1087. Rather, it requires "something more." Id. In the Ninth Circuit, that "something more" is "express aiming" at the forum state, meaning, "wrongful conduct" by the defendant "targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Id. In this case, the allegations in the Complaint satisfy the "something more" requirement because the alleged conduct is the intentional misrepresentations, or omissions, of fact regarding the existence of the voice recording which were specifically targeted at plaintiff in Oregon. Thus, this is not an alleged "untargeted" act of negligence with effects felt in the forum. Calder, 465 U.S. at 789. Rather, it is alleged to be purposeful defrauding of the plaintiff in Oregon. See also Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259-60 (9th Cir. 1989) (Arizona court had specific jurisdiction over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona).

Plaintiff sustains its burden of establishing a prima facie case of "purposeful direction."

14 - OPINION & ORDER

1  II.  Arising Out Of/Relating to Forum-Related Activities

2      The second prong of the specific jurisdiction analysis asks

3  whether the claims made against defendants arise out of their

4  forum-related activities.  Harris Rutsky, 328 F.3d at 1131.  The

5  Ninth Circuit uses a "but for" test to make that determination.

6  Id. at 1131-32.  The relevant question is but for defendant's

7  contacts with Oregon, would the claim against defendant have

8  arisen?  See Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995)

9  (posing question).

10     Plaintiff easily satisfies this element of the analysis.  But

11  for CMG's alleged fraudulent conduct, plaintiff would not have

12  suffered harm in Oregon and would have no claim.

13  III.  Reasonableness

14     If the plaintiff makes a prima facie showing on the first two

15  elements of the specific jurisdiction analysis, the burden shifts

16  to the defendant to establish a "compelling case" that the exercise

17  of jurisdiction would not be reasonable.  Boschetto, 539 F.3d at

18  1016.

19     The following factors are used to determine if the exercise of

20  jurisdiction is reasonable:

21          (1) the extent of the defendants' purposeful interjection
            into the forum state's affairs; (2) the burden on the
22          defendant of defending in the forum; (3) the extent of
            conflict with the sovereignty of the defendants' state;
23          (4) the forum state's interest in adjudicating the
            dispute; (5) the most efficient judicial resolution of
24          the controversy; (6) the importance of the forum to the
            plaintiff's interest in convenient and effective relief;
25          and (7) the existence of an alternative forum.

26  Harris Rutsky, 328 F.3d at 1132.

27     A.  Extent of Purposeful Interjection

28     Plaintiff argues that this factor favors it because CMG

15 - OPINION & ORDER

1   purposefully interjected itself into Oregon by fraudulently
2   inducing plaintiff to pay $150,000 for a license that "turned out
3   worthless." Pltf's Resp. Mem. at p. 7.

4       CMG suggests that this factor favors it because it did not
5   advertise, market, or actively seek licensing opportunities in
6   Oregon, because plaintiff reached out to it, and because it was
7   "the random, isolated, and fortuitous chance that Nike decided to
8   use the Lombardi intellectual property that caused the contact with
9   the State of Oregon rather than by CMG's purposeful availment of
10  itself." Deft's Mem. at p. 13.

11      This factor favors neither party or weighs slightly in favor
12  of plaintiff. On the one hand, CMG's argument ignores the nature
13  of the allegations against it. The <u>Marlyn Nutraceuticals</u> court
14  faced a similar argument from the defendants in that case. There,
15  the defendants noted that they had not personally conducted any
16  business in Arizona and had been accused of only sending emails and
17  mail to the forum. <u>Marlyn Nutraceuticals</u>, 663 F. Supp. 2d at 853.
18  The court explained that "[w]ere they accused merely of making
19  phone calls and sending email, the purposeful injection prong would
20  likely weigh in their favor." <u>Id.</u> But, the "problem with the
21  Defendants' argument is that it separates the communications from
22  their content." <u>Id.</u>

23          The communications are alleged to have conveyed
24      fraudulent statements that caused Plaintiff, an Arizona
        corporation, to take actions which the Defendants must
25      surely have known would cause it harm. By so doing, the
        Defendants purposefully injected themselves into this
26      forum. <u>See</u> <u>e.g.</u> [Dole, 303 F.3d] at 1114 (finding
        purposeful injection where "[n]ot only did [defendants]
27      know that their scheme would injure Dole U.S., which they
        knew had its principal place of business in California,
        but they also engaged in repeated communications with
28      Dole managers in California in furtherance of their

16 - OPINION & ORDER

1    alleged scheme.").

2    Id.  Here, with similar allegations, it can be argued that CMG
3    purposefully injected itself into the forum.

4         On other hand, plaintiff clearly initiated the contact at
5    issue here and reached out to CMG to inquire, and hopefully obtain,
6    certain intellectual property related to Vince Lombardi.  Thus, in
7    the end, this factor is almost evenly balanced or weighs slightly
8    in favor of plaintiff.

9         B.  Burden on Defendant of Defending in Oregon

10        CMG argues that the burden of litigating in Oregon would be so
11   great  as  to  deprive  it  of  due  process,  despite  modern
12   communications networks and available transportation.  As support,
13   it states that it is an Indiana corporation with no offices,
14   employees, property, or interests in Oregon.  In a declaration
15   submitted by Mark Roesler who identifies himself as an employee of
16   CMG who worked on the license agreement, Roesler states that the
17   majority  of  the  activities  on  behalf  of  the  Lombardis  were
18   undertaken in Indianapolis and Los Angeles.  Roesler May 10, 2010
19   Am. Declr. at ¶ 3.  He states that CMG conducts no business within
20   and  has  no  contact  with  Oregon  outside  of  the  negotiation  of
21   license agreements for the use of its various clients' rights of
22   publicity with plaintiff.  Id. at ¶ 4.  CMG has no offices,
23   employees, agents, property or otherwise in Oregon, is not licensed
24   by the Oregon Secretary of State to do business in Oregon, sells no
25   products in Oregon, pays no taxes in Oregon, and does not purchase
26   any materials in Oregon.  Id. at ¶ 5.

27        The problem with these statements is that they do not address
28   the question of the burden of litigating here.  Based on the

17 - OPINION & ORDER

parties' representations, this is not likely a case with an overwhelming number of documents. According to Roesler, there are two employees of CMG based on Indianapolis, one in Los Angeles, and another former employee, Pete Enfield, who, according to counsel for the Lombardis, resides in Indiana. This is not a substantial number of people who have to travel to Oregon on behalf of CMG. While certainly there is some burden on CMG to litigate here simply because it is not Indianapolis, it is not an extensive burden. This factor is neutral or favors plaintiff.

C. Extent of Conflict with Sovereignty of Indiana

This factor is neutral. Neither party identifies any issues related to this factor.

D. Oregon's Interest in Adjudicating the Dispute

Oregon's interest is high. CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir. 2004) ("The forum state has a substantial interest in adjudicating the dispute of one of its residents who alleges injury due to the tortious conduct of another."). This factor favors plaintiff

E. Most Efficient Judicial Resolution

Evidence and witnesses can be found in both Oregon and Indiana, as well as at least one CMG witness in California. The Lombardis prefer that the case stay in Oregon. Cases in the District of Oregon move through to trial only a few months faster than those in the Southern District of Indiana. See Deft's Mem. at p. 15 (citing Judicial Business of the United States - 2007 Annual Report of the Director 175-180 (showing median period of 21.6 months from date of filing until trial for the District of Oregon and median period of 28.1 months from the date of filing until

18 - OPINION & ORDER

trial in the Southern District of Indiana)). This factor is neutral.

F. Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief

Plaintiff states that Oregon is its home and presents the most convenient forum for adjudicating its claims against CMG. This is accurate, but, as the Ninth Circuit has noted, this is not a particularly important factor. CE Distribution, 380 F.3d at 1112 ("CE chose to adjudicate the litigation in Arizona, its home forum. Litigating in one's home forum is obviously most convenient. We have noted, however, that this factor is not of paramount importance.").

This factor favors plaintiff.

G. Existence of an Alternative Forum

The Southern District of Indiana is an alternative forum and plaintiff admits that it could pursue its claim against CMG there. This factor favors CMG.

H. Discussion of Reasonableness Factors

Of the seven factors, only the existence of an alternative forum outright favors defendant. Two favor plaintiff (Oregon's interest in the dispute and the importance and convenience of the forum to plaintiff). Four are neutral (the extent of the interjection, burden on defendant to defend here, conflict of law, efficient judicial resolution), with two of those (the extent of the interjection and burden on defendant to defend here) possibly favoring plaintiff.

Considered collectively, the analysis dictates a conclusion that CMG fails to present a compelling case that jurisdiction in

19 - OPINION & ORDER

Oregon is unreasonable.  Plaintiff establishes a prima facie case

of personal jurisdiction over CMG.

STANDARDS - MOTION TO TRANSFER

28 U.S.C. § 1404 governs motions to transfer venue:

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought.

28 U.S.C. § 1404(a).  The decision whether to transfer venue lies

in the discretion of the district court.  28 U.S.C. § 1404; Jones

v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (under

section 1404(a), "the district court has discretion to adjudicate

motions for transfer according to an individualized, case-by-case

consideration of convenience and fairness.") (internal quotation

omitted).

In determining proper venue, the court considers both public

and private factors.  Creative Tech., Ltd., v. Aztech Sys. Pte.,

Ltd., 61 F.3d 696, 699 (9th Cir. 1995).  Private factors

> include ease of access to sources of proof; compulsory
> process to obtain the attendance of hostile witnesses,
> and the cost of transporting friendly witnesses; the
> possibility of viewing subject premises; and other
> factors contributing to an expeditious and inexpensive
> trial.
>
> . . .
>
> [Public] factors include administrative difficulties
> flowing from court congestion; imposition of jury duty on
> the people of a community unrelated to the litigation;
> the local interest in resolving the controversy at home;
> the interest in having a diversity case tried in a forum
> familiar with the law that governs the action; and the
> avoidance of unnecessary conflicts of law problems.

Gemini Capital Group, Inc. v. Yap Fishing Corp., 150 F.3d 1088,

1093, 1094 (9th Cir. 1998).

Generally, defendants "must make a strong showing of

20 - OPINION & ORDER

inconvenience to warrant upsetting the plaintiff's choice of forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

## DISCUSSION - MOTION TO TRANSFER

CMG states that the Lombardis' business records relating to the licensing of the intellectual property for the last twenty-two plus years, are located in Indiana.  CMG also argues that any documents pertaining to the case, the alleged breach, and CMG's alleged fraud, would likely be located in Indiana.  Although CMG states that to the extent plaintiff's records, whatever they may be, are necessary, they can be converted to electronic format and be accessed in Indiana easily and cheaply, CMG does not explain why the same electronic formatting or scanning cannot be applied to its documents.

Plaintiff disagrees that the majority of the evidence is in Indiana and argues that evidence pertaining to liability is likely divided between the two states and what little evidence there is pertaining to damages is located in Oregon.

As noted above, this does not appear to be a document-intensive case.  Documents are located in both Indiana and Oregon. There appears to be no obstacle to electronic conversion of the documents wherever they are located.

As to witnesses, it does not appear that the majority of witnesses are in Indiana.  Plaintiff's witnesses (employees of plaintiff as well as those at the advertising firm with which Nike worked on the advertisement), reside in Oregon.  The other two named defendants do not reside in Indiana and they prefer that the case stay here.  Vince Lombardi, Jr. states he lives in Washington.

1    Lombardi Objs. to Motion to Change Venue at p. 1; but see Defts'
2    Mem. at p. 22-23 (indicating that Vince Lombardi lives in Green
3    Valley, Arizona or Easton, Washington, and Susan Lombardi lives in
4    Lake Placid, Florida).   Susan Lombardi does not say where she
5    lives, but states it is unlikely she would come to trial as she has
6    no relevant evidence.   Id.

7        As explained above, one of CMG's witnesses is in California
8    and two are in Indiana.   The fourth, Enfield, resides, according to
9    counsel for the Lombardis, in Indiana.

10       CMG contends that it is easier for its witnesses and the
11   Lombardis to travel to and from Indianapolis as there are multiple,
12   daily non-stop flights from Los Angeles, Orlando, and Washington,
13   to  Indianapolis  while  there  are  no  non-stop  flights  from
14   Indianapolis, Tucson, or Lake Placid, Florida, to Portland.   Deft's
15   Mem. at p. 23; see also Theodore Minch May 3, 2010 Declr. at ¶ 3
16   (stating from reviewing flight information at www.travelocity.com,
17   there  appear  to  be  no  direct  flights  between  Indianapolis,
18   Orlando, or Tucson, and Portland).   CMG also argues that its
19   witnesses would not be as inconvenienced by travel to Indiana as
20   they would by travel to Oregon because they would be able to work
21   out  of  CMG's  offices  in  Indianapolis,  resulting  in  minimal
22   disruption of daily responsibilities.   I note, however, that should
23   plaintiff's witnesses be required to travel to Indiana, they would
24   suffer disruption of their daily responsibilities.

25       CMG states that because Enfield, who was charged by CMG with
26   oversight for the Lombardi account, is no longer employed by CMG,
27   he would therefore "not likely be" subject to the subpoena power of
28   this Court.   CMG contends it would be prejudiced by the inability

22 - OPINION & ORDER

1    to get Enfield to court in Oregon to testify on CMG's behalf.

2    During oral argument on the motion, however, counsel for the

3    Lombardis represented that Enfield would voluntarily travel to

4    Oregon for deposition and trial.

5        CMG has to show that the transfer does more than merely shift

6    inconvenience. E.g., Decker Coal, 805 F .2d at 843. Additionally,

7    generally, a plaintiff's choice of forum is given considerable

8    weight. E.g., Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987)

9    (plaintiff's choice of forum is given "great weight.").

10       CMG cites to cases from the Northern District of Illinois and

11   the Southern District of Illinois to argue that while plaintiff's

12   choice of forum is usually a strong factor favoring the chosen

13   forum, when that forum is not the "situs of material events," or

14   has a relatively weak connection to the events, plaintiff's chosen

15   forum is entitled to less deference. CMG Worldwide, Inc. v.

16   Bradford Licensing Assocs., No. 1:05-cv-0423-DFH-TAB, 2006 WL

17   3248423, at *4 (S.D. Ind. 2006) ("Where the plaintiff's choice of

18   forum is not the situs of the material events, or has a relatively

19   weak connection to the events, plaintiff's chosen forum is entitled

20   to less deference"); International Truck & Engine Corp. v. Dow-

21   Hammond Trucks Co., 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002)

22   (noting that "[p]laintiff's choice of forum is entitled to

23   substantial weight, particularly when it is also its home forum[,]"

24   but further noting that "when the conduct and events giving rise to

25   the cause of action did not take place in the plaintiff's selected

26   forum, the plaintiff's preference has minimal value") (internal

27   quotation omitted).

28       These cases are distinguishable because the allegations here

23 - OPINION & ORDER

do not support a "weak" connection between CMG's alleged actions and Oregon.  The negotiations for the license agreement took place via email between Oregon and Indiana.  CMG's alleged misrepresentations were directed at plaintiff in Oregon and its harm was felt here in Oregon.  These facts do not negate the considerable weight given to plaintiff's choice of forum.

Overall, the private factors are either neutral or favor plaintiff.

II.  Public Factors

As noted earlier, the data regarding case disposition in Oregon and the Southern District of Indiana show about an equal timeline.  Court congestion is slightly higher in Indiana.

Oregon law is likely to apply to the case whether it is tried in Oregon or in Indiana and thus, the law of the forum state will be applied only if the case remains in Oregon.  There is no conflict of law argument.  Plaintiff contends that trying the case here will not unfairly burden citizens of an unrelated forum with jury duty because plaintiff is based here, signed the license agreement here, and was damaged by CMG's alleged actions here.

CMG argues that the legal issues are not complex and both breach of contract and fraud claims exist under Indiana law so that the Southern District of Indiana is familiar with the legal concepts at issue.  CMG also argues that Oregon has little or no relation to this controversy other than plaintiff being a resident of Oregon.  CMG argues that because the Lombardis' licensing activities over the past twenty-three years have been conducted in the Southern District of Indiana, and because CMG is located there, the Southern District of Indiana is more closely related to the

24 - OPINION & ORDER

1  controversy than the District of Oregon.

2      Both Oregon and Indiana have a connection to the controversy

3  by virtue of plaintiff's and CMG's respective residences.    While

4  this factor is probably neutral, the other public factors favor

5  plaintiff.

6      CMG has not made a compelling case to transfer the case to

7  Indiana.

8                          CONCLUSION

9      Defendant CMG's motion to dismiss or alternatively to transfer

10  (#11) is denied.

11      IT IS SO ORDERED.

12              Dated this  11th  day of   August    , 2010.

13

14

15                          /s/ Dennis James Hubel
                        _____
16  _____  Dennis James Hubel
                        United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

25 - OPINION & ORDER