1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                      FOR THE DISTRICT OF OREGON

11                          PORTLAND DIVISION

12   NIKE, INC., an Oregon        )
     corporation,                 )
13                                 )
                  Plaintiff,       )
14                                 )    No.  CV-10-389-HU
          v.                       )
15                                 )
     VINCE LOMBARDI, JR., an       )
16   individual; SUSAN LOMBARDI, an)
     individual; and CMG WORLDWIDE,)    OPINION & ORDER
17   INC., an Indiana corporation, )
                                   )
18                Defendants.      )
     ──────────────────────────────)

19
     Jon P. Stride
20   David M. Weiler
     TONKON TORP LLP
21   1600 Pioneer Tower
     888 SW Fifth Avenue
22   Portland, Oregon 97204-2099

23        Attorneys for Plaintiff

24   Jan K. Kitchel
     SCHWABE, WILLIAMSON & WYATT, P.C.
25   Pacwest Center
     1211 SW Fifth Avenue, Suite 1900
26   Portland, Oregon 97204

27        Attorney for Defendants Vince Lombardi, Jr. & Susan Lombardi

28   / / /

     1 - OPINION & ORDER

1  Bradley Schrock
   SCHROCK LAW OFFICE, P.C.
2  500 SW Hall Boulevard
   Beaverton, Oregon 97005
3
   Theodore J. Minch
4  SOVICH MINCH, LLP
   10099 Chesapeake Drive, Suite 100
5  McCordsville, Indiana 46055

6       Attorneys for Defendant CMG Worldwide, Inc.

7  HUBEL, Magistrate Judge:

8       Plaintiff Nike, Inc. brings this action against defendants

9  Vince Lombardi, Jr., Susan Lombardi, and CMG Worldwide, Inc.  The

10 action against the individual defendants is brought against them as

11 fifty percent owners of the intellectual property of the late Vince

12 Lombardi.

13      All parties have consented to entry of final judgment by a

14 Magistrate Judge in accordance with Federal Rule of Civil Procedure

15 73 and 28 U.S.C. § 636(c).  Defendant CMG moves to dismiss the

16 action for failure to join an indispensable party.  I deny the

17 motion.

18                            BACKGROUND

19      The background, based on the facts as alleged in the

20 Complaint, is fully set out in the August 11, 2010 Opinion & Order

21 denying CMG's motion to dismiss for lack of personal jurisdiction

22 and alternative motion to transfer.  Any additional facts are

23 referenced in the discussion below.

24                            STANDARDS

25      Defendants move to dismiss for failure to join an

26 indispensable party under Federal Rule of Procedure 19.  Fed. R.

27 Civ. P. 12(b)(7).  Rule 19 requires a two-step analysis to

28 determine whether a party should or must be joined.  Takeda v.

2 - OPINION & ORDER

Northwestern Nat'l Life Ins. Co., 765 F.2d 815, 819 (9th Cir. 1985).  Under Rule 19(a), the court must first determine whether the party is necessary or required.  Id.  A party is necessary if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

The "complete relief" inquiry concerns only the relief as between the existing parties, not between an existing party and the absent party whose joinder is sought.  Confederated Tribes of Chehalis Indian Reservation v. Lujan, 928 F.2d 1496, 1501 n.3 (9th Cir. 1991).  And, the "appropriate focus" in determining the necessity of a party under Rule 19(a) is on the "practical ramifications of joinder versus nonjoinder."  Puyallup Indian Tribe v. Port of Tacoma, 717 F.2d 1251, 1255 (9th Cir. 1983) (internal quotation omitted).

If the party is necessary, but its joinder will destroy jurisdiction, then the court must consider whether "in equity and good conscience" the action should proceed without his joinder.  Takeda, 765 F.2d at 819; see also EEOC v. Peabody W. Coal Co., 400 F.3d 774, 779 (9th Cir. 2005) (noting that whether a party is indispensable to an action involves "three successive inquiries" with the first determining whether the absent party is "required," the second determining the feasibility of joinder, and the third, if the absent party is required and cannot feasibly be joined, determining whether "in equity and good conscience," the action

3 - OPINION & ORDER

1    should proceed among the existing parties or should be dismissed).

2        Four factors are relevant to the indispensable inquiry:

3        (1) the extent to which a judgment rendered in the
         person's absence might prejudice that person or the
4        existing parties; (2) the extent to which any prejudice
         could be lessened or avoided by:   (A) protective
5        provisions in the judgment; (B) shaping the relief; or
         (C) other measures; (3) whether a judgment rendered in
6        the person's absence would be adequate; and (4) whether
         the plaintiff would have an adequate remedy if the action
7        is dismissed for nonjoinder.

8    Fed. R. Civ. P. 19(b).  Only if the court determines that the

9    action must be dismissed is the party deemed indispensable.

10   McLaughlin v. International Ass'n of Machinists and Aerospace

11   Workers, 847 F.2d 620, 621 (9th Cir. 1988).

12                          DISCUSSION

13       CMG argues that plaintiff's long time advertising agency,

14   Wieden + Kennedy (WK) is a necessary/required party which may not

15   be joined without destroying this Court's diversity jurisdiction

16   and thus, WK is an indispensable party and this action must be

17   dismissed.  In support of the motion, CMG relies on additional

18   facts not included in the Complaint.  The evidence consists of

19   emails written by WK employees, plaintiff's employee Mark

20   Thomashow, other employees of plaintiff, and CMG employee Mark

21   Roesler.

22       The emails show that WK was working on an ad, called the

23   "Voyeur," which, in concept, was going to use what WK thought was

24   a speech given by Vince Lombardi.  There are emails from WK to

25   plaintiff inquiring if the license to the speech had been obtained,

26   indicating that WK was going to also contact NFL films in an

27   attempt to locate the original speech, and inquiring if Thomashow

28   would inquire whether it would be possible to get permission to do

4 - OPINION & ORDER

a voiceover if WK did not like how the original speech sounded.

Other emails sought clarification that a $150,000 licensing had been paid. July 2008 emails suggest that there was some confusion by Thomashow who thought that WK already had a copy of the speech, and expressing frustration that he had not been told that a voiceover request was possible. Several emails in July 2008 sought to clarify what WK already had in terms of an audio of the speech. In late July 2008, Thomashow emailed CMG's Roesler and stated that WK had not actually heard the speech, but had read it in a book by Vince Lombardi, Jr. Thomashow expressed interest in obtaining a sound recording of the speech and asked Roesler if he knew of any "cache" of Lombardi speeches.

A couple of other emails in late July 2008 indicated that the original speech could not be found, but that pursuing "Vince Jr" to re-record "for the same cost as the original" should be pursued. But, a WK employee then indicated that WK would prefer that before moving forward, WK wanted to first award the job, talk with the director, and "have a final treatment" including voiceover talent.

The next emails are dated in January and February 2009, when WK asked Thomashow about the financial liability of the $150,000 payment if the speech was not used. Thomashow indicated that he had had no communication about the speech since July 29, 2008, and that CMG had already paid the Lombardis. He stated he had never been told there was a chance the speech would not be used. In a separate email to someone at Nike, as well as to the person at WK, Thomashow stated that the $150,000 was paid for the rights based on misinformation from WK as to what they wanted and what existed.

In February 2009, Thomashow learned from another Nike employee

5 - OPINION & ORDER

1   that it was likely the speech would not be used in the ad.  The
2   Nike employee indicated that they would still pay for it, but it
3   was likely it would not be used.  Thomashow then wrote to Roesler
4   explaining that the speech was not going to be used because it
5   ended up not being right for the concept.  He told Roesler that he
6   was disappointed that WK never told him not using the speech was a
7   possibility and that WK did not ask Thomashow to build in a "kill
8   fee" if the speech was not used.  Thomashow then asked Roesler to
9   pay back the $150,000.

10      Finally, there are several emails from June and July 2009,
11   regarding finishing the filming of the video.

12      CMG argues that the emails show that WK was responsible for
13   the origination, design, production, release, and placement of the
14   ad campaign that was to use the Lombardi intellectual property or
15   the Lombardi speech.  CMG asserts that the emails show that WK was
16   responsible for locating the audio of the Lombardi Speech, or in
17   the alternative, that WK was planning on using a voiceover should
18   WK be unable to locate the actual audio or the audio was not of
19   sufficient  quality.    According   to   CMG,  plaintiff's  sole
20   responsibility  was   to   secure   the   rights   to   the   Lombardi
21   intellectual property.

22      CMG  contends  that  based  on  WK's  primary  role  in  the
23   circumstances underlying this action, WK is a required party which
24   should be joined, and further, that WK is indispensable to this
25   action.  Generally, CMG argues that by failing to add WK, plaintiff
26   has sought to exclude from the court's, and ultimately the jury's,
27   consideration the detailed facts and circumstances associated with
28   the negligence and contributory liability of WK acting on behalf of

6 - OPINION & ORDER

1  plaintiff in regard to the speech.

2  I.  Rule 19(a) - Necessary or Required Party

3       The first inquiry of a Rule 19 joinder analysis is whether the
4  party to be added is necessary or required.  As stated above, a
5  party is necessary or required if, "in that person's absence, the
6  court cannot accord complete relief among existing parties." Fed.
7  R. Civ. P. 19(a)(1)(A).

8       CMG argues that complete relief cannot be afforded to either
9  it or the Lombardis if WK is not joined.  Specifically, CMG argues
10 that WK "holds the key to CMG's absolute defense of the one and
11 only cause asserted against CMG, fraud[.]"  Deft CMG's Mem. at p.
12 9.   CMG bases its argument on the following:   (1) WK was
13 responsible for the planning and design of the advertising campaign
14 in which the speech was to be used; (2) the payment for the rights
15 to use the Lombardi intellectual property was to be attributed to
16 WK's budget; (3) the existence of the speech notwithstanding, WK
17 was prepared to use a voiceover as  opposed to the voice of
18 Lombardi himself; (4) WK negligently failed to confirm that the
19 Lombardi Speech did not exist in audio form, nor did it seek to
20 confirm the availability as WK should have because the industry
21 standard of practice requires the advertising agency to do so; and
22 (5) WK did not communicate that the speech may not be used in the
23 campaign in any form, depriving plaintiff of the chance to
24 negotiate a "kill fee" in such a circumstance.

25      As I understand CMG's argument, it anticipates defending the
26 fraud claim asserted against it by plaintiff by arguing that (1)
27 given the facts regarding WK's involvement, CMG's alleged
28 misrepresentation about the existence of the voice recording was

7 - OPINION & ORDER

1   not material to plaintiff, or (2) plaintiff's reliance on the
2   misrepresentation was not reasonable, or (3) in the end, plaintiff
3   suffered no damages caused by CMG's alleged misrepresentation about
4   the existence of the recording because the recording was not used
5   by WK based on a creative decision. CMG contends that if WK is not
6   made a party, it will be prejudiced and unable to obtain full
7   relief.

8       Notably, CMG fails to explain <u>why</u> it will suffer such
9   prejudice in WK's absence. I agree with plaintiff that if CMG is
10  able to cast blame on WK, plaintiff will recover nothing in this
11  lawsuit and CMG will be provided complete relief in the form of a
12  verdict in its favor on the only claim against it.    Nothing
13  prevents CMG from making its argument at trial. CMG may subpoena
14  WK witnesses and offer evidence in support of its theory of the
15  case. As I explained at oral argument, CMG gets to point to the
16  empty chair, an opportunity most defense attorneys would relish.
17  And, alternatively, if CMG fails to convince the jury that WK is at
18  fault, plaintiff will be awarded damages accordingly, whether WK is
19  a party or not.    In either event, the existing parties will be
20  accorded full relief.

21      In a recent case, Judge Stewart came to the same conclusion.
22  In <u>Hurley v. Horizon Project, Inc.</u>, No. CV-08-1365-ST, 2009 WL
23  5511205 (D. Or. Dec. 3, 2009), adopted by Judge Redden (D. Or. Jan.
24  15, 2010), Judge Stewart rejected an argument similar to the one
25  made by CMG here. As she noted, the county defendants in the case
26  contended that complete relief under Rule 19 could not be afforded
27  in the absence of the State of Oregon as a party because the State
28  was liable for some or all of the plaintiff's injuries. <u>Id.</u> at *7.

8 - OPINION & ORDER

The county defendants, she noted, believed they would be "left holding the bag" without the State's presence. _Id._ The county defendants argued that their concerns over their ability to "pin blame on the State" were valid considerations in the "complete relief" analysis and compelled a finding that the State was a necessary party. _Id._

Judge Stewart rejected the argument, explaining first that joinder of a joint tortfeasor with "the usual 'joint-and-several' liability" is regulated by Rule 20, governing permissive joinder. _Id._ "[A] joint tortfeasor is not a necessary party to a lawsuit under FRCP 19[.]" _Id._ Then, she explained that the county defendants could be afforded complete relief:

> The county defendants remain free to contend that Hurley's injuries were caused by the State's actions. They may subpoena state witnesses and offer evidence in support of their arguments. Because the State will not be present to defend itself, it is difficult to understand how its absence will prejudice the county defendants.

_Id._ at *8.

The same is true here for CMG. Given that CMG can call WK employees as witnesses and can submit the email evidence at trial, CMG, like the county defendants in _Hurley_, is "free to contend that [the plaintiff's] injuries were caused by [WK's] actions." WK is not a necessary or required party under Rule 19(a)(1).

II.   Rule 19(b)

_Hurley_ and other cases indicate that if the party sought to be joined is not necessary/required, then the Court does not proceed to the Rule 19(b) analysis. _Id._ at *10; _e.g._, _LNG Dev. Co., LLC v. Port of Astoria_, No. CV-09-847-JE, 2010 WL 143821, at *5 (D. Or. Jan. 5, 2010) (when party was not necessary under Rule 19(a), court

9 - OPINION & ORDER

1   does not reach question of whether the party is indispensable under

2   Rule 19(b)).

3                           CONCLUSION

4       Defendant CMG's motion to dismiss [29] is denied.

5       IT IS SO ORDERED.

6                   Dated this <u>16th</u> day of <u>November</u>, 2010.

7

8                                   /s/ Dennis J. Hubel

9                                   _____

10                                  Dennis James Hubel
                                    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10 - OPINION & ORDER